UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

FRANK ANTHONY AND CLARE ANTHONY                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 1:08cv300-LTS-RHW

STATE FARM FIRE AND CASUALTY COMPANY                               DEFENDANT

### ORDER

This order addresses Defendant's [44] Motion for Partial Summary Judgment, which is aimed at several legal theories on which Plaintiffs' Complaint (attached as an exhibit to the [1] Notice of Removal) is based. These include breach of fiduciary duty; misrepresentation; estoppel and detrimental reliance; Mississippi's Valued Property Statute; indemnity; reformation; specific performance; and punitive and extra-contractual damages. Defendant also claims that it is entitled to judgment as a matter of law on Plaintiffs' request for the replacement cost of the dwelling covered by the insurance policy issued by Defendant.

Plaintiffs agree that they are not pursuing claims for breach of fiduciary duty and under Mississippi's Valued Property Statute. In addition, they do not offer any response with respect to estoppel and detrimental reliance; indemnity; reformation; or specific performance. The Court finds that Defendant is entitled to partial summary judgment on these issues, as well as misrepresentation and any recovery on the replacement cost value, as discussed *infra*.

As far as the remaining claims–punitive and extra-contractual damages (including mental and emotional distress)–are concerned, a thorough review of the record and the standards of Fed. R. Civ. P. 56 lead the Court to conclude that there are genuine issues of material fact preventing Defendant from receiving partial judgment as a matter of law.

Plaintiffs sustained substantial damage to their vacation home in Bay St. Louis, Mississippi, as a result of Hurricane Katrina on August 29, 2005. The structure, located at 506 Riverview Drive, was an elevated single family residence located approximately 50 yards from Edwards Bayou with access to the Jourdan River (and ultimately the Bay of St. Louis). The house was not repaired or replaced after the storm, and has been demolished.

The policy limits under Plaintiffs' homeowners policy were $112,700 for the dwelling, and $84,525 for the contents. An advance payment of $2,500 for additional living expenses was made by Defendant to Plaintiffs soon after the loss. However, because this was a second home, and additional living expenses were not available for this circumstance, this amount was later reclassified and applied to the benefits paid under the dwelling coverage. The net total amount paid to Plaintiffs (after applying the deductible and including the $2,500 for additional living expenses) was $11,210.01. This was in essence payment for the replacement of Plaintiffs'

damaged roof. No benefits were paid for contents. Plaintiffs also received flood policy proceeds in the amount of $124,100 for the dwelling, and $34,500 for the contents.

Defendant places great reliance on *Broussard v. State Farm Fire and Casualty Co.*, 523 F.3d 618 (5th Cir. 2008), for the proposition that it had an arguable basis and reasonable justification for the decision on Plaintiffs' claim, thereby preventing consideration of punitive damages. Defendant goes so far as to argue (docket entry [48]) that "the record in this case is far more ripe for summary judgment that the record in *Broussard*" because the house in that case was totally destroyed and the one in the instant case survived the storm. However, based on the record developed here so far, that conclusion and comparison may not be accurate.

The analysis contained in the report prepared for Defendant by Kurtis R. Gurley, Ph.D., in February 2009, includes the following observations (it should be pointed out that Dr. Gurley testified in the *Broussard* trial and is a consultant for hurricane wind effects on structures):

> The evidence also demonstrates that wind was responsible for most, if not all, of the roof damage, damage to the exterior wall siding, possibly collapse of portions of the second floor ceiling, probably one or more windows, and possibly more severe wall failures.
>
> * * *
>
> Collapse of the interior ceilings . . . is attributable to either rain water penetration through the damaged roof system, or surge rising from the inside reaching the ceiling. The available evidence does not allow a clear identification of cause. The report by Compton Engineering [prepared for Plaintiffs] stated the observation that surge debris was found in the attic, and the surge model . . . projects that surge did reach the ceiling of the upper story. *However*, given the timeline of the rising surge, and the likely timing of wind damage to the roof cover, it is reasonably likely that the cause of the ceiling collapse was rain water penetration through the damaged roof cover.
>
> * * *
>
> Damage to the NE and NW elevations (right side and back, respectively) was severe . . . . The percentage of exterior wall space that was glazed (windows) was very high . . . . Although the strongest winds from Katrina did not approach directly from the NE, it is probable that one or more of the second floor windows on the NE elevation was damaged by wind or debris. This could have lead to interior pressurization, and hence the outward failure of the walls and cracking of the roof structural components as observed in the Compton Engineering report. The possible window damage to the NE elevation by wind prior to surge is corroborated by the observe[d] window failures on the SW elevation.

> \* \* \*
>
> The light colored exterior siding installed over the original siding was almost completely removed, even where the original siding remained intact . . . . This is an indication that wind is more likely responsible for this damage than rising surge, particularly for the elevated floor. The broken windows observed in the elevated story . . . were also probably caused by wind.

(Emphasis supplied)

Dr. Gurley's conclusions in his report are consistent with these observations. His summary reads:

> Surge was certainly responsible for a portion of the damage (particularly the lower story). Wind was certainly responsible for the roof cover damage and some exterior siding loss, probably responsible for some interior content damage due to water penetration through the ceiling and broken windows, and possibly responsible for the outward collapse of the NE and NW elevations. However, surge cannot be ruled out as the cause of the structural failures and content loss.

These identified damages attributable to wind appear to be beyond the scope of damages previously acknowledged by Defendant as covered under Plaintiffs' policy.

It is critical to keep in mind that "[a]n insurance carrier's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment of it. Put more bluntly, if you owe a debt the duty to pay does not end when you are sued for nonpayment of it." *Gregory v. Continental Insurance Co.*, 575 So. 2d 534, 541 (Miss. 1991). *Broussard, supra,* also suggests that consequential or extra-contractual damages may be appropriate even when punitive damages are not. The Mississippi Supreme Court, in *United American Insurance Co. v. Merrill*, 978 So. 2d 613 (Miss. 2007), held that attorney's fees are justified where punitive damages are awarded.

Under the entirety of the circumstances and pursuant to Rule 56 it is not for the Court to weigh the evidence or evaluate the credibility of witnesses, but to consider the evidence submitted by the parties in support of and in opposition to the motion and grant all reasonable inferences to the non-moving party, in this instance the Plaintiffs. In other words, that evidence and those inferences drawn from it are viewed in the light most favorable to the non-moving party. The parties should understand that this does not mean, in the final analysis, that the jury will be given a punitive damages instruction or one that deals with extra-contractual damages. For present purposes, Defendant's [44] motion for partial summary judgment on the issues of punitive and extra-contractual damages is not well taken.

This Court is not persuaded to veer from its previous rulings on the issue of replacement

cost of the dwelling (which has not been replaced).  Entitlement to damages will be governed by the terms of the subject insurance policy, and under Plaintiffs' actual repair or replacement must be completed before replacement cost benefits are available.  Plaintiffs have not offered any persuasive authority or argument to nullify the clear and unambiguous terms of their policy.  Therefore, they are limited to the actual cash value of their dwelling loss.

Plaintiffs' misrepresentation theory does not survive for failure of reliance.  This is also consistent with the Court's prior rulings on this issue.

Finally, the Court is not in a position to render a decision on the merits of Plaintiffs' claims for mental and emotional distress damages.  While Defendant argues that Plaintiffs may not recover for *intentional* infliction of emotional distress because of a time bar, Plaintiffs may still pursue extra-contractual damages arising from the alleged breach of the contract by Defendant.

Accordingly, **IT IS ORDERED**:

Defendant's [44] Motion for Partial Summary Judgment is **GRANTED IN PART** (as to breach of fiduciary duty; misrepresentation; estoppel and detrimental reliance; Mississippi's Valued Property statute; indemnity; reformation; specific performance; and recovery of replacement cost benefits) and **DENIED IN PART** (as to punitive and extra-contractual damages).

**SO ORDERED** this the 4th day of November, 2009.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE